Filed 4/28/21  Carter v. Chancellor Health Care of Cal. VIII, Inc. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ANITA CARTER, AS SUCCESSOR IN INTEREST, ETC., et al., | C089986 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34201800230309CUNPGDS) |
| v. | |
| CHANCELLOR HEALTH CARE OF CALIFORNIA VIII, INC., et al., | |
| Defendants and Appellants. | |

Defendants Chancellor Health Care of California VIII, Inc., et al., doing business as Revere Court (Revere), appeal from the trial court's denial of its petition to compel arbitration against plaintiffs Anita Carter et al. (individually Carter or collectively plaintiffs).  On appeal, Revere contends (1) the trial court relied on improper legal criteria in determining that Carter's son, who signed the agreement, needed a medical power of attorney in order to bind plaintiffs to arbitrate; (2) the trial court erred in concluding the

1

arbitration provision was unconscionable; and (3) the trial court abused its discretion in refusing to stay a wrongful death claim while the elder abuse claim proceeded to arbitration. We affirm the judgment.

FACTS AND PROCEDURAL HISTORY

Carter, though her successor-in-interest, sued Revere, an assisted living facility, for elder abuse. A wrongful death claim was also brought by Carter's children, suing as individuals. After answering the complaint, Revere petitioned to compel arbitration, arguing "Plaintiff" had signed an unambiguous arbitration agreement. A copy of a "Residence and Care Agreement," an "application for residency in assisted living facility," and an "authorization form" for "Long-Term Care Program," were attached to the petition.

The Residence and Care Agreement began: "This Agreement is made between Chancellor Heath Care of California VIII, Inc., a Delaware Corporation ('CHCC') and _____ ('You' or 'Resident')." On that blank line, Carter's son's name was handwritten.

Several pages later, under a heading "signature by your agent," the agreement provided: "This Agreement must be signed by your Agent. Your Agent is any person including a relative, health care decision maker, or placement agency, who assists you in placement, or assumes varying degrees of responsibility for your well being."

Several pages after that, a clause titled "arbitration," provided in part: "This arbitration clause binds all parties to this Agreement and their spouses, heirs, representatives, executors, administrators, successors, assigns, managers, and agents as applicable."

Finally, at the end of the agreement was a signature page, with a signature line for "Resident's Agent." It was signed by Carter's son.

The first page of the "application for residency in assisted living facility" stated that, "[t]his application will become a part of the 'Residence and Care Agreement.' "

2

Further down, the form asked: "Has a legal-surrogate been appointed or designated in accordance with State law to act on behalf of Applicant?" The "yes" box was checked. Next to it, the form asked, "If yes, who?" Carter's son's name was handwritten in the blank. At the bottom of the page it stated: "If the applicant is incompetent or otherwise incapable of signing the application, the Applicant's legal-surrogate must sign the Application and the Residence and Care Agreement on the Applicant's behalf. Please provide Power of Attorney or Conservatorship Order."

The "authorization form" for "Long-Term Care Program," authorized the release of certain medical information. Above the form's signature line, Carter's son's name is printed and "Medical P.O.A." is handwritten. Below the signature line it stated: "All signatures, other than that of the Claimant, must be identified and accompanied by appropriate documentation of authority to represent the Claimant (for example: Durable Power of Attorney, Conservator, or Guardian)." The form was signed a year before the signature on the Agreement and Application. No documents were attached to the authorization form, as part of the record.

Plaintiffs opposed the petition, arguing, inter alia, that Revere had failed to establish Carter's son's authority to sign on Carter's behalf and argued the son's signature, representing he had such authority, was insufficient. Further, Revere had failed to demonstrate that Carter was incapacitated such that her son would have authority "to act under some unknown advanced health care directive."

Plaintiffs also objected, on foundation grounds, to the Application for Residency and Authorization Form.

Attached to the opposition was a declaration of Carter's son stating that on the day his mother was admitted, a facility employee took him aside and told him he was required to sign some paperwork to have his mother admitted. The son was not asked if he had power of attorney or if he had the power to sign.

In its reply, Revere offered what it purported to be "evidence of ostensible, and arguably, actual agency." It attached a Revere Court Memory Care document titled "Residential Chart," with plaintiff's name on it. Within the report were references to dementia, a "mental condition," and Alzheimer's.

Also provided was a document, on Chase letterhead, titled "durable power of attorney for deposit accounts." It stated that "[t]his document gives your agent the powers to manage, dispose of, sell, and convey your real and personal property, and to use your property as security if your agent borrows money on your behalf." On the signature page it stated in pertinent part, "I, the principal … execute this instrument as my Power of Attorney for the expressed purposes. I authorize the Agent named above to do all of the following things on my behalf as my act and deed, with respect to all of the accounts identified below. . . ." Five enumerated clauses followed, pertaining to writing and endorsing checks, agreeing to account modifications, receiving bank statements, and requesting additional services relating to the account. An account number was handwritten and initialed on the form. The form was also notarized and signed by Carter, with her son listed as agent.[1]

In the reply, Revere also sought to stay the wrongful death claim until arbitration of the elder abuse claim concluded.

The trial court denied the petition, concluding the arbitration agreement did not bind plaintiffs because Carter did not sign it. It explained: "Defendants have presented no evidence that [plaintiff] gave her son the ability to bind her to the Residency Agreement. Defendants rely only on statements or representations of the alleged agent.

---

[1] Plaintiff thereafter filed an objection, arguing inter alia, "[a] durable power of attorney for financial deposits is not sufficient proof of the authority to make health care decisions, or sign an arbitration agreement on behalf of a resident."

*Defendants have not, for example, provided a Power of Attorney executed by Anita Carter to give her son the ability to make medical decisions.*" [2]  (Italics added.)

The court noted that while the son identified himself in the application as a "legal surrogate," the application also required a Power of Attorney or Conservatorship Order "if the applicant is incompetent or otherwise incapable of signing the application . . . ." The court further noted that on the contract's first page, the son was listed as "You, or Resident" and "[t]hus on its face, the contract is not between Anita Carter and [the assisted living facility]."

The trial court also found the arbitration agreement procedurally and substantively unconscionable.  And it found that the wrongful death claim brought in Carter's children's individual capacities were not subject to arbitration, and even if Carter was bound to arbitrate the elder abuse claim, the danger of conflicting rulings on common issues of law or fact warranted keeping all claims in the pending action.

DISCUSSION

I

*Agreement to Arbitrate*

On appeal, Revere challenges the denial of its petition to compel arbitration, arguing the trial court employed "improper legal criteria" in concluding the son was required to have a power of attorney for health care decision.  Revere writes:  "in concluding that Revere Court 'presented no evidence that [] Carter gave her son the ability to bind her to the Residency Agreement,' the lower court pointed specifically to the lack of a 'Power of Attorney executed by Anita Carter to give her son the ability to make medical decisions.' "  Revere maintains it is not a health care provider and thus a

---

[2]  The trial court sustained plaintiff's objections to the declarations of counsel attached to the petition on reply, purporting to authenticate attached writings.

medical power of attorney was not required.  And because only nonmedical "residential" and "custodial" care was provided, only a more generalized Power of Attorney was required to bind plaintiffs to arbitration.  To that, Revere argues the power of attorney demonstrating the son had authority over Carter's bank accounts established authority to conduct financial transactions on her behalf and therefore sufficed to bind her to arbitration.  There is some uncertainty in the record whether the trial court excluded the power of attorney over bank accounts documents from the evidence on the motion, but excluded, or not, we disagree with Revere's argument.

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement . . . ." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)  On appeal, we review the denial of a motion to compel arbitration for substantial evidence.  (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 953.)  But if no facts are disputed, review is de novo. (*Ibid.*)  Where material facts are disputed, we accept the trial court's resolution of disputed facts if supported by substantial evidence, and we presume the court found every fact and drew every permissible inference necessary to support the judgment.  (*Ibid.*)

Here, Revere has failed to prove the existence of an agreement to arbitrate.  Fatal to its claim is the lack of evidence of the son's authority to sign for Carter.

Revere claims the trial court applied "improper legal criteria" in requiring a medical power of attorney, but in so arguing, Revere quotes selectively.  The full quote makes clear the trial court was citing a medical power of attorney as an example: "Defendants have not, for example, provided a Power of Attorney executed by Anita Carter to give her son the ability to make medical decisions."  Thus, the contention that the trial court employed improper criteria is not well taken.

Similarly unavailing is Revere's argument that the power of attorney attached to its reply gave rise to ostensible authority.  Putting aside foundational issues, the attached financial power of attorney expressly applied to a circumscribed set of activities

6

pertaining to a specific bank account.  In no way did it purport to grant authority to sign an assisted living agreement (and accompanying arbitration agreement) on plaintiff's behalf.  (See *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 589, 594 [denial of petition was proper where proponent failed to show the signee's authority to bind the party opposing arbitration].)  And the son's signature itself was insufficient.  (*Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1173 [" 'agency cannot be created by the conduct of the agent alone; rather, conduct by the principal is essential to create the agency' "].)

Having failed to show the son was authorized to sign for Carter, Revere has therefore failed to show an agreement to arbitrate.  Accordingly, the trial court properly denied the petition to compel arbitration.

II

*Remaining Contentions*

Revere raises two additional contentions.  It contends the trial court erred in finding the arbitration agreement procedurally and substantively unconscionable.  And it contends the trial court abused its discretion in refusing to stay the wrongful death claim while the elder abuse claim proceeded to arbitration.

Having found the trial court properly denied the petition to arbitrate based on the failure to establish an agreement to arbitrate, we need not address Revere's challenge to the unconscionability finding, and we may similarly reject the final contention on the ground that it rests on the assumption that the petition to compel arbitration should have been granted.

7

DISPOSITION

The judgment is affirmed.  Revere shall pay plaintiffs' costs on appeal.  (Cal. Rules of Court, rule 8.278.)

                                                  _____

                                                  HULL, Acting P. J.

We concur:

_____

ROBIE, J.

_____

MURRAY, J.